**LAW OFFICE OF CHARNEL JAMES**
**Charnel James, # 289326**
117 C. St
Marysville, CA 95901
Telephone:(530) 923-4678
cjames@charneljameslaw.com

Attorneys for Plaintiff
SISKIYOU ALTERNATIVE MEDICINE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT

| | |
|---|---|
| SISKIYOU ALTERNATIVE MEDICINE<br><br>Plaintiff,<br><br>v.<br><br>JON LOPEY, SISKIYOU COUNTY, SISKIYOU COUNTY SHERIFF'S DEPARTMENT, SISKIYOU COUNTY COMMUNITY DEVELOPMENT, SISKIYOU COUNTY BOARD OF SUPERVISORS, DOES 1-10<br><br>Defendants. | Case No. ______________<br><br>**COMPLAINT FOR DECLARTORY, INJUNCTIVE RELIEF, COMPENSATORY, AND PUNITVE DAMAGES** |

**JURY TRIAL DEMAND**

Plaintiff SISKIYOU ALTERNATIVE MEDICINE (Herein SAM) hereby brings this civil rights action against JON LOPEY, SISKIYOU COUNTY SHERIFF'S DEPARTMENT, SISKIYOU COUNTY COMMUNITY DEVELOPMENT, SISKIYOU COUNTY BOARD OF SUPERVISORS, DOES 1-10, Inclusive. Except as to allegations that pertains to SAM, its members and their counsel, Plaintiff alleges the following on information and belief:

## I.INTRODUCTION AND STATEMENT OF MATERIAL FACTS

1. SAM is a volunteer organization with membership that is organized for the sole purpose of providing a safe haven for disabled patients, and to provide oversite to ensure that the county is acting within the authority of the law. Members of SAM are medical marijuana patients that are

authorized under California state law to cultivate, possess and use medical marijuana. The members are a diverse race, age and disability.

2. The SISKIYOU COUNTY BOARD OF SUPERVISORS (herein SISKIYOU BOS) passed two local ordinances pertaining to the cultivation of medical marijuana within the county limits (respectively 15-18 and 15-19). The cultivation ordinance allows cultivation in a limited circumstance, with certain land use conditions, including that the plants need to be indoors. The members of SAM collected enough signatures to have a referendum of the local ordinances, which was put on the June 2016 ballot. The referendum failed, and the SISKIYOU COUNTY SHERIFF'S DEPARTMENT (herein SHERIFF) and SHERIFF JON LOPEY (herein LOPEY) began harassing and intimidating members of SAM and other disabled patients shortly after the referendum failed and the final count was in (estimated to be around mi- July.)

3. LOPEY has recorded his own videos and posted them on the SISKIYOU COUNTY SHERIFF'S website, in which he has racial derogatory remarks about medical marijuana cultivators of Hmong decent, and has made derogatory remarks about disabled patients in general and that he intends to run them all out of Siskiyou County.

4. SISKIYOU COUNTY COMMUNITY DEVEOPMENT department has utilized the Sheriff's department to assist in the enforcement of ordinances 15-18 and 15-19, and at its convenience have, provided a larger portion of citations and abatement orders to medical marijuana patients of Hmong heritage than those of other races, through the help of the SHERIFF'S office.

5. LOPEY has, in at least one instance, appeared at and encouraged a Property Owners Association to act as a reporting agency to report Hmong cultivators, and has used that POA as a vehicle to get access to property to execute faulty warrants, which have resulted in a number of medical marijuana gardens to be seized, as well as other personal property that is not relevant to any alleged criminal investigation.

6. A number of SAM members have had warrants executed on them, and have had their medical marijuana plants removed, and the warrants have lacked judicial signatures (more often than not executed by the District Attorney's office. The warrants are vague as to the location and the description of the items being searched for, the grounds for the alleged criminal activity, and limited on the items that they are to seize. The warrants state that parts of plants may be seized, but not the entire plant, and they do not list items such as generators (which are very expensive and hard to

locate in an area like Siskiyou County.) Remaining members are fearful that if they speak up they too will be targeted.

8. California's have passed the Compassionate Use Act (CUA) and the Medical Marijuana Program Act (MMPA) and recently the Medical Marijuana Regulatory and Safety Act (MMRSA). The CUA and MMPA allow an exception and protection against criminal charges, prosecution and conviction for cultivation of medical marijuana when they are disabled patients as defined under the regulations, and have obtained a valid recommend for the consumption of medical marijuana as an alternative medical source.

9. Part of the interpretation of those regulations includes an obligation for a law enforcement agency to confirm if the person that is under investigation is compliant with CUA and MMPA (insert cites for Kelly and the other one). The protection is in place so long as the patient has a valid recommend, and that they are not abusing the recommend that they have. Prior investigations include determining the size of the garden and the statements of the patient as to the manner in which the medical marijuana is consumed.

10. Beginning in early August, LOPEY and a number of his officers (which are unknown at this time, but will be included in the DOES once they are obtained) threatened that they would start to go in and cut down 10 gardens a week. They have begun that action. SAM members that have been affected by this so far include a disabled woman with 12 plants (well within her recommend limit) and other disabled members with plant counts below 40 plants (all within their recommends). The greater number of the warrants executed thus far has been on the Hmong community. There is no prior contact, no investigation, no interviewing the members of the community, and when they come out they ignore the valid recommends that are posted on the property and not only take the plants, but everything that they can take, even down to personal documents and journals.

11. To further harass the medical marijuana community, LOPEY and his deputies have threatened water delivery trucks that if they sell water to any medical marijuana cultivator, they would be charged with Federal charges.

12. The community members of SAM are in fear for their safety, health and wellbeing given the repeated number of hate talks that have been published by LOPEY, and have allowed to continue by the SISKIYOU BOS.

13. The Defendant SISKIYOU COUNTY SHERIFF'S DEPARTMENT is specifically names

Defendant herein pursuant to *Shaw v. State of California Dept. of Alcoholic Beverage Control* 788 F.2d 600, 605 (9th Cir. 1986); *Doggett v. United States* 858 F.2nd 55, 561 (9th Cir. 1988); *Streit v. County of Los Angeles* 236 F.3d 552, 557 (9th Cir. 2001).

13. As alleged more fully below, the MUNICIPAL DEFENDANTS caused the Plaintiff's members injuries through their policies, practices and/or customs that ratify SISKIYOU COUNTY SHERIFF'S DEPARTMENT duties abuse of police power and use of excessive force. The MUNICIPAL DEFENDANTS knew or should have known, that their deputies were not properly trained and routinely abused their police power to threaten, intimidate and harass minorities and disabled persons solely because they were a minority or disabled person. Yet, the MUNICIPAL DEFENDANTS not only failed to take the action necessary to prevent reoccurrence of these violations, they made such violations foreseeable by condoning their deputies abuse of power. Through these acts and omissions, the MUNICIPAL DEFENDANTS proximately caused all injuries to the members of SAM.

**JURISDICTION AND VENUE**

14. This court has "federal question" jurisdiction over this action, applicable to the states under the Fourth and Fourteenth Amendments of the United States Constitution. This is a civil rights action pursuant to 42 U.S.C. §§ 1981 and 1983. Jurisdiction in this Court is therefore proper under 23 U.S.C. §§ 1331.

15. This Court has jurisdiction under 28 U.S.C. §1343(a)(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. §1983. Plaintiff's claim brought under California state law arises out of the same transactions and occurrences, and out of a common nucleus of operative facts as the plaintiff's federal questions claims, this court has jurisdiction over the Plaintiff's California State law claims under its supplemental claim jurisdiction, pursuant to *Mike Workers v. Gibbs,* 383 U.S. 715 (1966) and 28 U.S.C. § 1367(a).

16. The acts and omissions complained of occurred in the COUNTY OF SISKIYOU, State of California. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. §1391.

**PARTIES**

17. Plaintiff SISKIYOU ALTERNATIVE MEDICINE is and at all times herein mentioned is a community member organization that includes community members of diverse racial, ethnic and disability status. They are duly organized under the State of California, and all members are residents

of Siskiyou county, within the Eastern District of California of the United States District Court.

18. Defendant JON LOPEY is and was at all relevant times, the Sheriff of Siskiyou County, and is employed by the SISKIYOU COUNTY SHERIFF'S DEPARTMENT and has been acting within the scope of his employments as the Sheriff.

19. Plaintiff SAM sues JON LOPEY in his individual and official capacity as an active participant in, or alternatively as a by-standing official who willingly failed to intervene to protect Plaintiff from, the violations alleged herein.

20. Defendant COUNTY OF SISKIYOU, including Defendant SISKIYOU COUNTY SHERIFF'S DEPARTMENT, SISKIYOU COUNTY COMMUNITY DEVELOPMENT and SISKIYOU COUNTY BOARD OF SUPERVISORS are public entities under California Government Code section 811.2, organized and existing under the laws of the State of California, and are the public employers of the Sheriff and his deputies that are named herein as Defendants in this action.

21. Plaintiff is unaware of the true names and capacities of Defendants sued as DOES 1 through 10. These DOE Defendants are in some manner legally responsible for acts and/or omissions causing claimed damages by reason of negligence, careless, deliberately indifferent, intentional, willful or wanton misconduct, in creating and otherwise causing the incident, conditions and circumstances, or by reason of direct or impugned negligence or vicarious fault or breach of duty arising out of the matters herein alleged. Plaintiff will seek leave to amend this Complaint to allege said Defendants' true names, identities and capacities when that information becomes known to them.

22. DOES 1 through 10 reside or work as officials of the COUNTY OF SISKIYOU, the SISKIYOU COUNTY SHERIFF'S DEPARTMENT, SISKIYOU COUNTY COMMUNITY DEVELOPMENT, or SISKIYOU COUNTY BOARD OF SUPERVISORS.

23. At all times relevant herein, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-defendants.

24. In addition, defendants COUNTY OF SISKIYOU and the SISKIYOU COUNTY SHERIFF'S DEPARTMENT are liable for plaintiff's injuries in this action, because it created a de facto policy of its sworn Sheriff: 1) using unreasonable and excessive force on persons, 2) unlawfully seizing persons and properties, and 3) covering up misconduct by sworn Sheriff and his Deputy Sheriffs

against private persons.

25. Among other things alleged herein, the actions of the Defendants and each of them, violated the following clearly established federal constitutional rights of the Plaintiff:

(a) Freedom from unreasonable seizure of property;

(b) Freedom from a deprivation of Plaintiffs members' property without due process of law;

(c) Freedom from summary punishment

(d) Freedom from discrimination and targeted hate crimes by the government.

26. In addition to the above and foregoing, all of the individually named Defendants to this action, including Defendants DOES 1 through 10, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme, to deprive Plaintiff of their constitutional rights as described below, and acted in joint and concerted action to so deprive Plaintiff of their constitutional rights as set forth below; all in violation of the United States Constitution and 42 U.S.C §1983, and otherwise in violation of California state law. Said conspiracy/agreement/understanding/ plan/scheme/joint action/concerted action, above referenced, was a legal cause of the violation of Plaintiff's constitutional rights and damages emanating therefrom, as set forth below.

## JURISDICTIONAL PREREQUISITES

27. No government claim filing prerequisite or other administrative remedy need be exhausted to establish jurisdiction in this matter. A state may not impose substantive limitations on a Civil Rights Act action, thus a federal civil rights claim need not be presented to a public entity before filing suit. *Florio v. City of Ontario*, 130 Cal.App.4th 1462, 1468 (2005); *California Correctional Peace Officers Assn v. Virga* (2010) 181 Cal.App.4th 30, 38 (2010).

## F

## STATUTORY, SCHOLARLY AND PRECEDENTIAL FACTS

*1871 Civil Rights Enforcement Act*

28. Enacted originally in 1871, the act provides the following: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. (42 U.S.C. § 1983). The courts have held that municipalities fell within Section 1983's definition of "person," thereby allowing individuals to sue local governments and their officers. Still, the Court limited the circumstances under which local governments could be liable to situations where the wrong resulted from official policies. (*Monell v. Department of Social Services*, (1978) 436 U.S. 658). Subsequently, in Maine v. Thiboutot (1980), the Court observed that because Section 1983 applies to federal statutory laws and well as constitutional laws, it not strictly limited to civil rights or equal protection laws. *Maine v. Thiboutot, 448 U.S. 1 (1980).*

*Compassionate Use Act and Medical Marijuana Program Act*

29. In November, 1996, California voters approved the Compassionate Use Act ("CUA"). Ca. Prop. 215 [1996]; Ca. Health and Safety Code § 11362.5. The CUA in-part provides that the state should implement a safe and affordable distribution system that provides for all seriously-ill Californians in need of medical marijuana. Ca. Health and Safety Code § 11362.5(B)(1)(c). In 2003, the California Legislature approved the Medical Marijuana Program Act ("MMPA"). Stats. 2003, Ch. 875; enacted 2003, effective 1/1/2004; Ca. Health and Safety Code § 11362.7, et seq. The enacting language in the MMPA refers to the distribution system included by the voters in § 11362.5(B)(1)(c) of the CUA. Part of the MMPA, Ca. Health and Safety Code §11362.775, implements that system. The two laws allowed Californians to use and cultivate marijuana for medical purposes within stated limits as long as they are properly prescribed.

*Emerging Acceptance*

30. The acceptance of medical cannabis has only grown since and policies toward medical cannabis have rapidly changed.

31. As of the filing of this Complaint, more than thirty-two (32) states and the District of Columbia have enacted some form of cannabis legislation for patients suffering from severe illness

and disability; (B) Congress enacted Sec. 538 of Public Law 113-265 restricting the use of funds by the federal Department of Justice against implementation of medical cannabis laws in 32 states (Congress reauthorized section 538 for fiscal year 2016); (C) in January, 2013, the National Cancer Institute, part of the federal government's National Institutes of Health, reported cannabis reduces the size of cancerous tumors; (D) in 2003, the United States obtained a patent titled, "The Antioxidant and Neuroprotective benefits of Cannabinoids;" (E) multiple scientific studies and reports show cannabis is the only medication effective in treating severe childhood epilepsy; (F) numerous scientific articles report cannabis is effective in treating a myriad of human health ailments; and (G) both the FDA and the US Surgeon General has acknowledged that it is an alternative treatment.

*Federal Substantive Due Process*

32. On Federal Substantive Due Process, Although the Fifth Amendment's Due Process Clause states only that "no person shall be deprived of life, liberty, or property without due process of law (see U.S. Const. amend. V) it unquestionably provides substantive protections for certain unenumerated fundamental rights. "The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." Washington v. Glucksberg, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)

33. Modern substantive due process precedent "forbids the government to infringe upon certain 'fundamental' liberty interests at all . . . unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

34. There are multiple methods for finding an unenumerated fundamental right.

35. In Glucksberg, the Supreme Court set forth the two elements of the substantive due process analysis. First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. Glucksberg, 521 U.S. at 720-21, 117 S.Ct. 2258

36. To determine the existence of an unenumerated fundamental right, the Supreme Court has also used an "emerging awareness" model. Lawrence v. Texas, 539 U.S. at 571, 123 S.Ct. 2472. In striking down the challenged sodomy statutes, the court noted in Lawrence that only thirteen states had maintained their sodomy laws and there was a noted "pattern of nonenforcement." Id. at 573, 123 S.Ct. 2472. The Court observed that "times can blind us to certain truths and later generations can see that laws once thought necessary and proper in fact serve only to oppress." Id. at 579, 123 S.Ct. 2472.

37. In areas related to making decisions for a person's medical care, the Supreme Court has notably recognized a fundamental right for the use of contraceptives [Eisenstadt v. Baird, 405 U.S. 438, (1972)]. It has also recognized the right to refusing unwanted medical treatment. Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, (1990). The *Cruzan* court reasoned that the common law protected individuals from bodily encroachment by others because of notions of personal autonomy. Id. at 269.

38. This fundamental interest in medical treatment was expanded by the Glucksberg court, in concurring opinions the court stated "a patient who is suffering from a terminal illness and who is experiencing great pain [should face] no legal barriers to obtaining medication, from qualified physicians, to alleviate that suffering, even to the point of causing unconsciousness and hastening death." Glucksberg, 521 U.S. at 736-37 (O'Connor, J., concurring.)

*Federal and California Due Process*

39. As to both federal and California due process rights, "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976)

40. Procedural Due Process as guaranteed by both the Federal and California constitution follow similar tests. However, it should be noted that in California an additional factor is analyzed.

41. More specifically, identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) *the dignitary interest in informing individuals of*

*the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, (additional California factor)* and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Id. at p. 269, 158 Cal.Rptr. 316, 599 P.2d 622)

42. In California, "freedom from arbitrary adjudicative procedures is a substantive element of one's liberty ... This [California] approach presumes that when an individual is subjected to deprivatory governmental action, he *always has a due process liberty interest* both in fair and unprejudiced decision making and in being treated with respect and dignity."

[*People v. Ramirez*, supra, 25 C3d at 268, 158 CR at 320]

43. In California, the denial of a hearing to protest a discretionary agency decision depriving a person of a "statutorily conferred benefit" is treated as a deprivation of liberty.

44. In addition, under the California Constitution, the denial of an application for a status or benefit triggers due process protection.

*Federal Equal Protection*

45. On Federal Equal Protection, denying a persona a benefit due to poverty in conjunction with exercising a fundamental right has been deemed an equal protection clause breach.

46. The Supreme Court first addressed the relationship between poverty, fundamental rights and equal Protection in *Griffin v. lllinois* in 1956. *351 U.S. 12 (1956). Griffin* involved indigent persons in Illinois who had been convicted of armed robbery, but who could not pursue an appeal of their convictions because they could not afford to pay for the mandatory trial transcript. Id. The Supreme Court held that it violated Equal Protection to deny an appeal of a criminal conviction to an indigent person who could not afford a transcript, stating "In criminal trials, a State can no more discriminate on account of poverty than on account of religion, race, or color. Id. at 17.

47. Similarly, in *Boddie v. Connecticut*, the Supreme Court in 1971 held that filing fees in divorce cases, as they were applied to low income persons who could not afford to pay them, violated the Due Process Clause of the Fourteenth Amendment. 401 U.S. 371, 372, 383 (1971). In his concurring opinion, Justice Douglas asserted that the poor are a suspect class and the filing fees, as applied to them, violated Equal Protection. See id. at 385-86 (Douglas, J.,

concurring).

*California Equal Protection*

48. California Constitution Art. I, Section 7(a), Art IV, Section 11, 21 and Civil Code Section 52.1 provide that no citizen may be denied equal protection of the law, that all laws should have a uniform operation, and that no citizens can be granted privileges and immunities not granted on the same terms to all citizens.

49. Financial disparity is outright protected under the California Constitution.

*Unreasonable Searches and Seizures*

50. The Fourth Amendment of the US constitution guarantees The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

51. This applies with equal force in the case of administrative searches. However, for administrative cases, there is no ready test for determining reasonableness, other than by balancing the need to search against the invasion which the search entails. [People v. Hyde, 12 Cal. 3d 158, 115 Cal. Rptr. 358, 524 P.2d 830 (1974)]

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Substantive Due Process – 42 U.S.C. 1983, V Amendment United States Constitution)

52. Plaintiff realleges and repleads all of the allegations in paragraphs 1 to 51 of this Complaint and incorporates them by reference.

53. Plaintiff asserts a narrow fundamental right protected by the substantive due process clause to make a doctor-recommended, patient-approved medical decision to cultivate and use medical cannabis above the narrow limits and restrictions set by the Siskiyou County Ordinance when other medical treatments have proven ineffective to avoid pain and addiction.

54. There is an emerging awareness of this fundamental right given that thirty-two (32) states and the District of Columbia have enacted some form of cannabis legislation for patients suffering from severe illness and disability; (B) Congress enacted Sec. 538 restricting the use of funds by the

federal Department of Justice against implementation of medical cannabis laws in 32 states; (C) in January, 2013, the National Cancer Institute, part of the federal government's National Institutes of Health, reported cannabis reduces the size of cancerous tumors; (D) in 2003, the United States obtained a patent titled, "The Antioxidant and Neuroprotective benefits of Cannabinoids;" (E) multiple scientific studies and reports show cannabis is the only medication effective in treating severe childhood epilepsy; (F) numerous scientific articles report cannabis is effective in treating a myriad of human health ailments; and (G) both the FDA and the US Surgeon General has acknowledged that it is an alternative treatment.

55. Defendants LOPEY, COUNTY, CODE ENFORCEMENT, and BOARD OF SUPERVISORS denied Plaintiff this right to substantive due process by enacting and enforcing Siskiyou County Ordinance 15-18 leading to the destruction of Plaintiff's medical cannabis.

56. Furthermore, LOPEY and the Sheriff's department have denied Plaintiff the right to substantive due process by failing to provide adequate notice, and by selectively targeting the Hmong community and vocal dissenters to the ordinance.

57. Plaintiff's right to substantive due process under the Fifth Amendment to the United States Constitution was violated by this denial without compelling reason.

58. Plaintiff has a cause of action for violation of his constitutional right to substantive due process, under the Civil Rights Act, 42 U.S.C. § 1983.

**Second Claim of Relief**
**(Procedural Due Process-California Constitution)**

59. Plaintiff realleges and repleads all of the allegations in paragraphs 1 to 58 of this Complaint and incorporates them by reference.

60. Defendants COUNTY, CODE ENFORCEMENT and BOARD of SUPERVISORS policy of charging excessive appeal fees operates to strip Plaintiff of his dignitary interests in fair decision making and in being treated with dignity and respect under the California Due

Process Clause.

61. Plaintiff has been stripped of his statutorily conferred benefits under the Compassionate Use Act as a medical marijuana patient without any meaningful opportunity to be heard through Defendants actions of discrimination, threatening behavior and excessive force.

62. Plaintiff has a cause of action for violation of his constitutional right to procedural due process, under the California Constitution.

**Third Claim of Relief**
**Violation of the Fourth Amendment Right – Unlawful Seizure**

63. Plaintiff realleges and repleads all of the allegations in paragraphs 1 to 62 of this complaint.

64. The warrants that are issued, when they are actually provided to the members of SAM that have had criminal warrants issued to them, are not properly signed, supported by appropriate affidavits nor are they executed according to state and/or federal regulations.

65. None of the Defendants either believed or reasonable could have believed that there continues to be illegal marijuana grows when each of the community members have valid prescriptions for medical marijuana which qualifies them for protection from criminal warrants, searches and siezures under the California Compassionate Use Act. The Defendants have refused to recognize the compliance with the above regulations, and instead deem that the Plaintiff's members are in violation simply because they are Hmong, or that they are disabled and make alternative choices in medication.

66. Said actions of the Defendants constitute a violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution to be from an unlawful and unreasonable search and seizure. Defendants and each of them, are liable to Plaintiff pursuant to Title 42 ISC Section 1983 for depriving Plaintiff of his rights, privileges and immunities secured by the Constitution.

67. As a direct and proximate result of defendants' actions, above-reference, Plaintiff is

substantially physically, mentally and emotionally injured, and plaintiff's members have suffered and continue to incur costs and general damages and expenses in an amount to be ascertained according to proof at trial.

68. The acts by said Defendants were done maliciously and in reckless disregard of Plaintiffs' constitutional rights, sufficient for an award of punitive/exemplary damages against defendants in an amount to be ascertained according to proof at trial.

**Fourth Claim of Relief**

**California Constitution – Equal Protection**

69. Plaintiff realleges and repleads all of the allegations in paragraphs 1 to 62 of this complaint and incorporates them by reference.

70. The California Constitution outright protects discrimination on the basis solely of race and/or disability.

71. Defendants have denied Plaintiff his ability to appeal a decision that infringed upon Plaintiff's fundamental right to make decisions relating to his medical treatment based solely on his race or disability.

72. Plaintiff has a cause of action for violation of his constitutional right to equal protection, under the California Constitution.

**BASIS FOR INJUNCTIVE RELIEF**

73. Pursuant to Rule 65, this is a Verified Complaint. The Complaint and fact contained in it have been verified through declarations signed under penalty of perjury by PLAINTIFF representative Wayne Walent .

74. The facts providing a basis for a temporary restraining order and preliminary injunction (Fed. Rule Civ. Proc. 65(b)(1)(A)) are those set forth in paragraph 1 through paragraph 74 of this complaint and are more specifically:

A. DEFENDANTS infringed upon PLAINTIFF's fundamental right to be free from discrimination based on their race and/or disability. There are more than 20 articles and videos published by LOPEY on the DEFENDANTS County endorsed website (the official Siskiyou County Sheriff's Department Website) wherein LOPEY continues to speak about the Hmong community as criminals and that they need to be "run" out of the county. He and his officers are also threatening water companies to not provide water to the people, despite the need for these people to use water to bath, cook and drink.

B. DEFENDANTS denied PLAINTIFF due process and equal protection by abusing their office and engaging in behavior that is discriminatory and threatening.

C. DEFENDANTS engaged in an expansive unreasonable search and seizure of PLAINTIFF's property without sufficient cause and involving improper threats, many of which warrants are not properly signed and/or executed in excess of the warrant and without probable cause.

D. PLAINTIFF's members continue to be threatened with arrest and seizure of their property despite acting within the law of the California Compassionate Use Act.

. "[A]n alleged constitutional infringement will often alone constitute irreparable harm." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997).

75. Indeed, if an individual or entity faces threat of prosecution under an invalid law, the individual or entity suffers irreparable harm. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (a federal court may properly enjoin "state officers 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act."); See also *Villas at Parkside Partners v. City of Farmers Branch,* 577 F. Supp. 2d 858, 878 (N.D. Tex. 2008) (concluding that there is a likelihood of irreparable injury if enforcement of an invalid city ordinance is not enjoined).

76. SAM and its members will continue to suffer immediate harm without the Courts intervention and injunction. LOPEY and his officers have declared that they will eradicate at least 10 patients gardens a week, and has continued to do so. There has never been any investigation to see if the patients are in compliance with the CCUA, they only need to be Hmong and/or Disabled.

77. The County will suffer little, if any hardship, if it is enjoined from enforcing Siskiyou

County Ordinance 15-18 and 15-19 (if they are using it as grounds to remove plants, however thus far it has not been the reason). Accordingly, the balance of hardships that must be weighed by the Court for purposes of injunctive relief weighs heavily in favor of Plaintiffs.

78. There are numerous constitutional violations set forth by Plaintiffs in this Complaint. The likelihood of Plaintiffs' success on the merits is substantial.

## Prayer for Relief

WHEREFORE, Plaintiff prays for a judgment in his favor as follows:

1. Issue a judgment declaring that the acts of the Defendants described herein violate the Fifth, Fourth, and Fourteenth Amendment to the United States Constitution; the Substantive Due Process, Procedural Due Process, Equal Protection, and Non-Discrimination Clauses of the California Constitution.
2. Issue an injunction ordering Defendants to stop engaging in such unconstitutional and Unlawful.
3. For compensatory damages and consequential damages to be awarded to SAM according to proof at trial;
4. For exemplary and punitive damages to be awarded to SAM according to proof at trial;
5. For interest;
6. For costs of suit and attorneys' fees; and
7. For such other and further relief as the Court may deem just, proper, and appropriate.

## Demand for Jury

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38-1 of the Local Rules, Plaintiff demands trial by jury for all the issues pleaded herein so triable.

Dated: September 1, 2016

LAW OFFICE OF CHARNEL JAMES

By: Charnel J James

CHARNEL JAMES, ESQ.
Attorneys for Plaintiff

**VERIFICATION**

I, WAYNE WALENT, am the President of Siskiyou Alternative Medicine and the Plaintiff in this this action. I have read the foregoing petition and complaint and am familiar with its contents. The facts recited in the petition and complaint are true and of my personal knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 9/2/2016

Wayne Walent

Wayne Walent